Coos,
No. 5991.

LANCASTER DEVELOPMENT CORPORATION

*v.*

GEORGE T. KATTAR & *a.*

February 27, 1970.

*Mack M. Mussman* and *David B. Shepatin* ( *Mr. Shepatin* orally ), for the plaintiff.

*Batchelder & Murphy* and *McLane, Carleton, Graf, Greene & Brown* ( *Mr. William F. Batchelder* orally ), for the defendants.

PER CURIAM. This is a petition for specific performance of an

option to buy land. Trial by the Court resulted in a decree of specific performance, dated February 18, 1969, exercisable not later than March 31, 1969. Defendants' exceptions were transferred by *Grant, J.*

As a result of the settlement of litigation involving the land in question, known as the Bog Pond tract in Lincoln, the defendant Kattar became the purchaser of it. As part of the settlement, Kattar gave plaintiff an option to purchase the property at any time within three years from April 19, 1965, to be exercised by written notice. Not less than 30 days nor more than 60 days after the notice, Kattar was to deliver a quitclaim deed to the tract and contemporaneously with delivery, plaintiff was to pay by cash or certified check the sum Kattar had paid ( $71,200 ) plus interest at 6% per annum and "a sum equal to all taxes paid or accruing." The option was "to be exercised upon the terms hereinafter set forth and not otherwise." The deed was to be "given upon the express condition" that the plaintiff "within three ( 3 ) years from the date hereof" shall exchange the Bog Pond tract with the U. S. Forest Service "for National Forest land, so-called, conveyed by the U. S. Forest Service [to plaintiff] in the unincorporated Town of Kilkenny . . . and the within deed is given for the sole purpose of enabling [plaintiff] to exchange said land, as aforesaid, and for no other purpose whatsoever." It was further provided that "this option is non-assignable and is given for the sole purpose of exchanging the premises" for the National Forest Service land in Kilkenny.

It was plaintiff's desire to develop a grandiose ski and recreational area in Lancaster, Jefferson and Kilkenny. It purchased about 1750 acres of land and needed about 1370 acres of National Forest land in Kilkenny in addition to complete the project. An interim permit to use the Forest Service land for two years ending December 31, 1966 was issued preliminary to a recreational lease if plaintiff met three conditions: ( 1 ) avoidance of interference with town water supply, ( 2 ) $1,000,000 deposit in bank funds for the construction of ski facilities, ( 3 ) build an access road. Plaintiff sought to interest the National Forest Service in swapping the Kilkenny area for the Bog Pond land, the plan being to meet the conditions of the interim permit, build the facilities on a lease basis, then formally apply for the land exchange. The option agreement was designed to permit the execution of this plan.

Plaintiff failed to meet the conditions and the interim permit lapsed. The town of Lincoln opposed the swap because of the loss in taxes involved. The plaintiff had lost through foreclosure of the first mortgage one tract of land and was being sued by the second mortgagee. Its bank account was attached and its treasurer in August 1968 was holding some $13,000 of corporate funds in a trust account in his own name.

On March 15, 1968, plaintiff gave notice of its desire to exercise the option on April 19, 1968. This would require the payment of some $90,000.

Kattar had mortgaged the premises and had conveyed them to the Second Presidential Corporation which he controls. Neither of these factors would cause any problem. One Koenig had attached the land on a writ with a $500,000 ad damnum which was recorded after the option had been recorded. It was not possible to obtain a release of this attachment, but since it was junior to the option, it apparently created no problem. The chances of making the swap with the Forest Service were dim.

On June 19, 1968, no deed or purchase price having been tendered, a conference was held at which defendants proposed to deposit a deed to the Forest Service in escrow and also hold the option payment in escrow if the plaintiff would allow defendants to negotiate a land damage claim and access problems with the State until the exchange took place or the option period expired. They also proposed to repay the full option price instead of the lesser sum of $71,200 as provided by the option agreement.

No agreement was reached, however, and August 12, 1968 was agreed upon as a cutoff date on which plaintiff could either make tender or agree to some alternative.

The Trial Court found that six of the plaintiff's directors verbally agreed on a method of raising the option price. The treasurer agreed to advance $10,000 from his personal account and the $13,000 he held in trust, and Roberts Motors, a concern owned and controlled by two other directors, agreed to advance $67,000 of its funds to make the $90,000 required. A certified check for the option price was to be obtained in this manner.

On August 12, 1968, plaintiff's attorney was notified that the deed to be tendered had been executed on June 10 and contained the condition relating to the sole use as stated in the option agreement, but also contained the following: "[P]ursuant to this condition, the grantee specifically may not use the land as security

for any mortgage, nor cut or remove any growth of any kind therefrom, nor disturb nor remove any of the soil or minerals located thereon."

This language was objected to and its elimination was requested by plaintiff. Plaintiff was advised by its attorney that a tender of the option price would be required even though plaintiff was not satisfied with the deed. With the closing time set at 5 P.M. in Plymouth, plaintiff's attorney at about 3 P.M. notified plaintiff's officers that no change had been made in the deed. Plaintiff's officers stated that it was too late to secure a certified check, that they would not attend the closing. No tender of the purchase price was then or has since been made.

Although the officers of the plaintiff testified that the "sole use" limitation of the option agreement precluded the plaintiff from doing any of the things forbidden in the added clause of the proposed deed, the Trial Court found that the deed offered contained "a very real limitation . . . not contained or inferred in the original option contract" and ruled that the plaintiff was not obligated to accept it and run the risk and incur the expense of litigation in trying to secure a reformation. He also found that the plaintiff had met its burden of establishing "its readiness, willingness and ability to raise the option price." Specific performance was ordered to be exercised not later than March 31, 1969 unless otherwise agreed by the parties.

At a conference involving counsel and the Trial Court held on March 21, 1969 relating to the amount of the purchase price, the Court ruled that the price to be paid by plaintiff would include the taxes accrued to the date of the deed but that it should not include interest accrued after August 12, 1968.

The plaintiff had a right to refuse a deed which contained conditions not warranted by the option agreement, but had no right to object to conditions which were implied in that agreement. See 92 C. J. S. Vendor and Purchaser, s. 238. Whether the deed proposed by the defendant met the requirements of the agreement depends upon an interpretation of the deed and the agreement. This is a matter of law for this court. Kennett Corporation v. Pondwood Co., 108 N. H. 30, 226 A. 2d 783; Murray v. Peabody, 106 N. H. 319, 211 A. 2d 855.

We agree with the Trial Court that the plaintiff was not required to accept the deed with the added provisions. If these restrictions were impliedly included in the restrictions of the op-

tion, then there was no need to include the added language in the deed. Defendants would be fully protected by the inclusion of the option language, but by acceptance of the deed with the added terms, plaintiff might have been accepting greater restrictions than the option agreement called for. We are of the opinion that at least the prohibition against mortgaging the property was not implicit in the terms of the option restriction. If the property was free to be conveyed back to the defendants without depletion of the natural resources at the end of the three-year period if the swap was not consummated, the defendants were not entitled to more. The inclusion of this restriction added a prohibition which the plaintiff was not required to accept.

We are also of the opinion that the Trial Court could properly find as it did that the plaintiff was ready, willing and able to raise the option price and that under the circumstances, the plaintiff was not required to comply with the strict rule of tender as required by such cases as *Sargent* v. *Graham,* 5 N. H. 440, and *Otis* v. *Barton,* 10 N. H. 433. Under the circumstances, it was sufficient if plaintiff was able, ready and willing to perform its part of the agreement. *Durepo* v. *May,* 73 R. I. 71, 54 A. 2d 15; *Butler* v. *Richardson,* 74 R. I. 344, 60 A. 2d 718; *Fournier* v. *Cass,* 49 R. I. 35, 139 A. 655. *See also, Lowell* v. *First Church of Christ,* 101 N. H. 363, 143 A. 2d 671. The decree of specific performance was properly entered.

We disagree, however, with that part of the ruling of the Trial Court made at the conference held on March 21, 1969 that the plaintiff be required to pay the taxes from August 12, 1968 to the date of the deed. His finding that the defendant was in default for failure to tender a deed in accordance with the terms of the option agreement makes defendant responsible for all added expenses of both interest and taxes resulting from the delay in passing of title after August 12, 1968. The matter therefore is remanded to the Trial Court for the establishment of another date for the exercise of plaintiff's right to specific performance at the same price that would have applied had the conveyance been made on August 12, 1968.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.