Grafton
No. 89-461

JOSEPH FERRERO

v.

JAMES W. COUTTS & a.

June 5, 1991

*Baker & Hayes,* of Lebanon (*Patrick T. Hayes* and *Nina W. Lloyd* on the brief, and *Mr. Hayes* orally), for the plaintiff.

*Nighswander, Martin & Mitchell P.A.,* of Laconia (*Nancy L. Girard* and *David S. Osman* on the brief, and *Mr. Osman* orally), for the defendants James W. Coutts and Isabella S. Coutts.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the defendants Strout Realty, Inc. and Beverly P. MacIntosh.

*John J. McCormack,* of Ashland, by brief and orally, for the defendant Bruce G. Alexander.

BATCHELDER, J. These appeals are from a decision of the Superior Court (*Smith,* J.) ordering specific performance of an agreement

for the sale of real estate owned by defendants James and Isabella Coutts in North Woodstock. The plaintiff, Joseph Ferrero, and the Couttses executed a purchase and sale agreement for the property, but the property was ultimately conveyed to defendant Bruce Alexander. After the conveyance to Alexander, the plaintiff brought an action seeking rescission of the sale, as well as specific performance of the plaintiff's purchase and sale agreement with the Couttses. He also sought damages from Strout Realty, Inc. (Strout), the broker in the transaction, and its local agent, Beverly MacIntosh, upon the theory that they had tortiously interfered with the contractual relationship allegedly existing between the plaintiff and the Couttses. After a three-day bench trial, the court ruled in favor of the plaintiff on all three claims. It is noteworthy that on the plaintiff's tortious interference claim, the court originally ordered Strout and MacIntosh to pay the plaintiff's costs of litigation and attorney's fees but later vacated the order on the granting of a motion for reconsideration.

All four defendants appeal the court's order. The Couttses deny that a valid contract existed between them and the plaintiff and, in the alternative, assert that specific performance under the circumstances of the case is inappropriate. Alexander contends that no valid tender was made by the plaintiff which would trigger entitlement to specific performance, and Strout and MacIntosh argue that they did not tortiously interfere with the alleged Ferrero-Coutts contract. For the reasons that follow, we reverse.

This real estate transaction, involving a house and land on Main Street in North Woodstock, originated with a "purchase offer and deposit receipt" dated September 27, 1984, between the owners, the Couttses, and the prospective purchaser, the plaintiff. The agreement was negotiated on behalf of the Couttses by Beverly MacIntosh, a real estate agent from Strout. The agreed purchase price was $35,000. According to the terms of the purchase offer, the plaintiff was required to tender, as a down payment in addition to an initial deposit of $100, a $5,000 note secured by a mortgage on other property described as located at Lost Valley. The balance of the purchase price was to be paid by the delivery of a note and purchase money mortgage in the amount of $27,550, payable over a fifteen-year period, and the payment of the broker's commission of $2,450 partly in cash and partly by a promissory note. The plaintiff agreed to pay the closing costs, and the taxes were to be prorated. If, as will be seen, the initial $100 deposit seemed modest as a fulcrum upon which to lever the transaction, the lever itself was lengthened by the fact that

part of the consideration offered by the plaintiff was a note and second mortgage upon property already mortgaged and which the plaintiff did not own or control.

Minor changes in the agreement were negotiated over time, and the original closing date was extended from November 27, 1984, to February 15, 1985. There is a dispute on appeal concerning whether the plaintiff and the Couttses ever entered into a binding contract. However, we do not address this issue because, assuming that a binding contract did exist, we hold that the court erred in granting specific performance.

 With regard to contracts for the sale of land, specific performance will be decreed unless the circumstances of the case make it inequitable or impossible to do so. *Shakra v. Benedictine Sisters*, 131 N.H. 417, 421, 553 A.2d 1327, 1330 (1989). Such a circumstance exists when the party seeking specific performance fails to show that, at the time of claimed entitlement to the conveyance, he was ready, willing and able to perform his share of the bargain. 71 AM. JUR. 2d *Specific Performance* § 60 (1973); *see also Lancaster Development Corporation v. Kattar*, 110 N.H. 163, 167, 262 A.2d 278, 280–81 (1970) (holding that specific performance was properly ordered where the plaintiff was ready, willing and able to perform its obligations under the agreement). In the present case, the plaintiff agreed to give a mortgage in the amount of $5,000 on the Lost Valley property as part of the consideration for the conveyance to which he claims entitlement. Yet, according to the evidence contained in the record, the plaintiff was unable to complete this aspect of the transaction. The plaintiff testified at trial that his mother, not he, owned the property in Lost Valley, and that he had no written power of attorney from her that would enable him to grant the $5,000 mortgage without her consent. Nor is there other evidence that he was ready, willing and able to perform his share of the contract. In sum, the plaintiff failed to sustain his burden of proof on an issue that was a prerequisite to the relief sought. Therefore, we hold that the trial court erred as a matter of law in granting specific performance in favor of the plaintiff.

 The only issue remaining is whether the trial court erred in ruling that MacIntosh and Strout tortiously interfered with the alleged contract between the plaintiff and the Couttses. The trial court's ruling is diluted almost to the point of mootness by its additional rulings that the plaintiff did not prove "any damages arising out of the . . . wrongful interference with a contractual relationship

claim" and that this "is not a proper case for an award of costs and attorneys fees." Damages are of course an element to be proven in this type of claim as with any other tort claim, and the absence of such proof defeats the plaintiff's claim in this case. *See Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46, 534 A.2d 706, 709 (1987). Moreover, the conduct of MacIntosh and Strout, as revealed in the record before us, falls short of the intentional conduct for which recovery is permitted. *See id.*; *see also Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 143, 459 A.2d 226, 230 (1983) (noting that New Hampshire has not recognized liability for negligent interference with a contractual relationship). Indeed, as the trial court found, MacIntosh's advice to the Couttses that their contract with the plaintiff was not binding and that they were free to accept Alexander's offer, which the plaintiff argues constituted tortious interference, was based on a legal opinion obtained from the Couttses' attorney, George Ray, a fact which would tend to show that they gave this advice in good, rather than bad, faith. Accordingly, we hold that the trial court erred in ruling that MacIntosh and Strout tortiously interfered with any contract existing between the plaintiff and the Couttses.

For the foregoing reasons, we reverse the trial court's order rescinding the Couttses' sale of the property to Alexander and decreeing specific performance in favor of the plaintiff, as well as its order that the plaintiff reimburse Alexander for expenses incurred in maintaining the property. The court's ruling that MacIntosh and Strout tortiously interfered with the contract allegedly existing between the plaintiff and the Couttses is also reversed. Since the plaintiff introduced no evidence at trial as to damages he may have suffered as a result of the Couttses' alleged breach of contract, and, furthermore, since the trial court ruled that this "is not a proper case for an award of costs and attorneys fees," we see no reason to remand this case for any further proceedings.

*Judgment for the defendants.*

All concurred.