Strafford
No. 92-129

CLIPPER AFFILIATES, INC.

v.

SAMUEL L. CHECOVICH

March 15, 1994

*McNeill & Taylor, P.A.*, of Dover (*Edwinna C. Vanderzanden* and *Lynne M. Dennis* on the brief, and *Ms. Vanderzanden* orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Alice K. Page* on the brief, and *Mr. Middleton* orally), for the defendant.

*Ford, Ford & Weaver*, of Portsmouth (*Mark F. Weaver* on the brief and orally) for the intervenor, Kathleen Sternenberg.

BATCHELDER, J.   This is an appeal by the plaintiff, Clipper Affiliates, Inc. (Clipper), from the decision of the Superior Court (*Dickson*, J.) granting the defendant's, Samuel L. Checovich, motion to dismiss. We affirm in part, reverse in part, and remand.

Clipper, through its affiliated companies, operated various types of living facilities for elderly persons. Checovich was employed by Clipper from early 1984 through June 30, 1988, managing its financial operations. On January 8, 1988, Clipper's president, William E. Gilmore, Jr., discharged Checovich. Pursuant to the terms of the discharge Checovich agreed to remain employed until June 30, 1988. As compensation for remaining with the company and helping to train his successor, Checovich was given a $20,000 loan, to be repaid by returning to Clipper two $10,000 bonuses for satisfactory work performance in March and June. Although Clipper paid the March bonus and Checovich applied it to repay one-half of the loan, Checovich never received the anticipated $10,000 in June. Consequently, Clipper alleges that $10,000 of the loan remains outstanding.

Checovich currently operates Huntington Common, a retirement community in Kennebunk, Maine, similar to those run by Clipper. His partner in the venture is Douglas Stockbridge, Gilmore's nephew, also a former Clipper employee.

Gilmore, disgruntled because Checovich, three days after his termination, provided Gilmore's then estranged wife, Nancy, with corporate financial information for use in her divorce proceedings, sued Checovich in the name of the company for breach of contract and breach of employment/fiduciary duties. Checovich, subscribing to the view that the best defense is a good offense, counterclaimed, alleging abuse of process, intentional interference with advantageous business relations, and breach of contract for nonpayment of wages for his final two weeks employment.

At the jury-waived trial, Clipper attempted to prove that Checovich, Stockbridge, and the intervenor, Kathleen Sternenberg, worked together in the development of Huntington Common during the term of Checovich's employment with Clipper. It also alleged that the disclosure to Nancy Gilmore, even though done after Checovich's employment with Clipper was terminated, breached both Checovich's employment contract and his fiduciary duty to the company. At the close of Clipper's evidence, Checovich moved to dismiss, arguing that Clipper had failed to meet its burden of proof. The

trial court granted Checovich's motion, heard evidence on his counterclaim, and ruled for him on all three counts. Clipper's motion to set aside the verdict on the counterclaim was denied. This appeal followed. Clipper concedes that the verdict for Checovich on count III of his counterclaim, seeking payment for his final two weeks of employment, was proper, but appeals the ruling for Checovich on the other two counts of his counterclaim. Clipper also argues that the trial court erred: (1) in ruling that Checovich breached neither his employment contract nor his fiduciary duty to Clipper; (2) in awarding a $10,000 bonus to Checovich; (3) in certain evidentiary rulings; (4) in failing to allocate the burden of proof to Checovich on his counterclaim; and (5) in awarding damages, fees, and costs.

■ The standard of review for a motion to dismiss at the close of the plaintiff's case in a jury-waived trial simply stated is that we will not set aside the trial court's findings of fact unless they are clearly erroneous and will not reverse the dismissal unless it is inconsistent with the findings or contrary to law. *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 78, 600 A.2d 448, 452 (1991).

Clipper first argues that Checovich's disclosure of confidential corporate information to Nancy Gilmore during the divorce proceedings breached the employment contract and his fiduciary duty to his corporate employer. It does not dispute that the documents lawfully came into Checovich's hands while he was in charge of Clipper's financial operations. Nor does it disagree that the employment contract had expired by the time the disclosure was made. Further, Gilmore testified that he ultimately provided the information to his wife's attorney during discovery in the divorce proceeding. Clipper nevertheless pursued this claim.

■ Clipper's argument involves both a contract and a tort cause of action. In an action for breach of contract, "[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established *with reasonable certainty*." RESTATEMENT (SECOND) OF CONTRACTS § 352 (1981) (emphasis added); *see Parem Contracting Corp. v. Welch Const. Co.*, 128 N.H. 254, 259, 512 A.2d 1104, 1107 (1986). In tort, "[o]ne to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation *with as much certainty as the nature of the tort and the circumstances permit*." RESTATEMENT (SECOND) OF TORTS § 912 (1982) (emphasis added); *see Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 447, 374 A.2d 929,

933 (1977). In this case, more than reasonable certainty of damages was lacking. First, there was no evidence that the disclosure harmed Clipper, the corporate plaintiff, as opposed to Gilmore individually. Second, Clipper presented no evidence of *any* harm whatsoever. Indeed, at oral argument Clipper conceded that it suffered no financial damage and that it was "not even sure that Mr. Gilmore would say that he had been hurt." Consequently, Clipper failed to meet its burden of proof on this issue which, in any event, comes to nothing.

Clipper next argues that the trial court erred in awarding Checovich $10,000 for the unpaid June bonus. The trial court found justification for the payment of the bonus. Because our review of the record supports this finding, Checovich was entitled to the June bonus. *See Renovest*, 135 N.H. at 78, 600 A.2d at 452.

■ Clipper, in a broad stroke, next contends that the trial court "demonstrat[ed] a lack of judicial neutrality" in its evidentiary rulings. Evidentiary rulings are within the sound discretion of the trial court. *Johnston v. Lynch*, 133 N.H. 79, 89, 574 A.2d 934, 940 (1990). Consequently, this court will not disturb the trial court's rulings unless they are clearly untenable or unreasonable to the prejudice of the complaining party's case. *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 295, 608 A.2d 840, 856 (1992).

Without listing the numerous objections, we summarize them as challenging the rulings of the trial court in excluding its proffered evidence and admitting that of Checovich. Our canvass of the record discloses no abuse of discretion.

■ Clipper's argument that the trial court erred in granting Checovich's motion to dismiss lacks merit. In support of its contention, it restates its previous evidentiary arguments. Because we have determined that those arguments are groundless and because the dismissal was neither inconsistent with the findings nor otherwise contrary to law, *Renovest*, 135 N.H. at 78, 600 A.2d at 452, the grant of Checovich's motion to dismiss was proper.

■ We now look to Clipper's challenges to the verdict for Checovich on the counterclaim. In order for it to prevail it must show that the trial court's decision is erroneous as a matter of law or unsupported by the evidence. *Riverwood Commercial Prop's v. Cole*, 134 N.H. 487, 490, 593 A.2d 1153, 1156 (1991).

Count I of the counterclaim alleged that Clipper had intentionally interfered with Checovich's advantageous business relations. Assuming that such a cause of action is prosecutable under New Hampshire law, *cf.* 4 RESTATEMENT (SECOND) OF TORTS at 1–2 (1979),

Checovich failed to prove that he was harmed in any way. (We note that the First Restatement's section on interference with business relations was omitted from the Second Restatement because it was more appropriately covered by unfair competition, trade regulation, and labor law.) Checovich contended that Clipper had interfered with his relationship with various banking institutions. Although he argued here that his damages were the cost of defending Clipper's lawsuit and his diversion from other business activities, these "damages" did not flow from any interference with his banking relationships. They were, if anything, the cost of defending a lawsuit. Indeed, Checovich conceded at oral argument that he was not refused any loans or charged any higher interest rate because of his involvement in the lawsuit.

■ We reject also his argument that his damages were solely his "embarrassment." Damages in tort must be proven "with as much certainty as the nature of the tort and the circumstances permit." RESTATEMENT (SECOND) OF TORTS § 912. A bald assertion of "embarrassment" alone lacks the degree of specificity required in establishing damages. *See Bailey v. Sommovigo*, 137 N.H. 526, 531, 631 A.2d 913, 917 (1993); *Ferrero v. Coutts*, 134 N.H. 292, 295, 591 A.2d 1320, 1322 (1991). Because Checovich failed to meet his burden of proof on the intentional interference claim, the trial court's verdict for him on count I lacked the requisite factual foundation to be sustained here. *See Riverwood*, 134 N.H. at 490, 593 A.2d at 1156.

Count II of the counterclaim alleged abuse of process. Although our reading of the counterclaim reveals that the petition to attach with notice was the process that was allegedly abused, Checovich contended at oral argument that the process abused was also the lawsuit itself. Considering both theories, we conclude that Checovich fails on this count.

■ "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." RESTATEMENT (SECOND) OF TORTS § 682, at 474 (1977). The tort comprises two essential elements: an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding. W. P. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS 898 (5th ed. 1984).

> "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the

payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort."

*Id.* Absent "some form of compulsory process forcing the performance or forbearance of some prescribed act," *Long v. Long*, 136 N.H. 25, 31, 611 A.2d 620, 624 (1992) (quotation omitted), a claim of abuse of process fails.

In this case, no ulterior or illegitimate purpose was alleged by Checovich. The petition to attach with notice, which was successfully challenged, sought only security for a contemplated judgment in the underlying action. *See* RSA 511-A:1 (Supp. 1993). It is likewise not enough to claim that the lawsuit was initiated "to retaliate against and harass Checovich." There is no liability where a party has done nothing more than carry out the process to its authorized conclusion, even though with ulterior intentions. *See, e.g., Elliott v. Warwick Stores, Inc.*, 329 Mass. 406, 409, 108 N.E.2d 681, 683 (1952). Consequently, the verdict for Checovich on his abuse of process claim was also devoid of requisite factual support and was therefore erroneously awarded. *See Riverwood*, 134 N.H. at 490, 593 A.2d at 1156.

Clipper's final argument challenges the award of costs and attorney's fees to the intervenor, Sternenberg, as well as the award of costs, attorney's fees, lost wages, expert witness fees, and enhanced compensatory damages to Checovich. We first consider the award of attorney's fees to Sternenberg.

The general rule in this State is that each *party* to a lawsuit is responsible for payment of his or her own attorney's fees. *Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 462, 617 A.2d 648, 651 (1992) (emphasis added). In this case, Sternenberg concedes in her brief that she "was not a party to the litigation, being only a witness." Although no one challenged the trial court's grant of her motion to intervene, we note that a person who seeks to intervene in a case must have an interest in the subject matter of the litigation. *See Carlton v. Patterson*, 29 N.H. 580, 587 (1854). Further, that interest must be "direct and apparent; such as would suffer, if not indeed be sacrificed, were the court to deny the privilege." *Pike v. Pike*, 24 N.H. 384, 394 (1852). Here Sternenberg sought to intervene solely "for the purposes [*sic*] of having counsel present during her testimony." Consequently, the trial court's grant of her motion to inter-

vene may well have been an abuse of discretion not challenged here. *See Snyder v. N.H. Savings Bank*, 134 N.H. 32, 34, 592 A.2d 506, 507 (1991).

■ The trial court determined that attorney's fees were warranted "[g]iven the threats of Plaintiff's counsel regarding perjury which forced Ms. Sternenberg to retain counsel for the purposes [*sic*] of appearing in this matter." An award of attorney's fees, however, must be grounded upon "statutory authorization, an agreement between the parties, or an established exception [to the rule that each party is responsible for paying his or her own counsel fees]." *Maguire v. Merrimack Mut. Ins. Co.*, 133 N.H. 51, 55, 573 A.2d 451, 453 (1990). We have recognized exceptions "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right" if bad faith can be established, *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977); "where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct," *St. Germain v. Adams*, 117 N.H. 659, 662, 377 A.2d 620, 623 (1977); as "compensation for those who are forced to litigate in order to enjoy what a court has already decreed," *Keenan v. Fearon*, 130 N.H. 494, 502, 543 A.2d 1379, 1383 (1988); and "for those who are forced to litigate against an opponent whose position is patently unreasonable," *id.*

■ In this case, Sternenberg was neither forced to litigate nor subjected to litigation. Even assuming that she was properly a party, the conduct of plaintiff's counsel, although arguably exceeding the bounds of appropriate advocacy, did not fall within any of the recognized exceptions to the general rule in this State that each party bears the burden of paying his or her own attorney's fees. Accordingly, the trial court's exercise of discretion in awarding attorney's fees to Sternenberg was misplaced. *See Triesman v. Town of Bedford*, 135 N.H. 573, 574–75, 607 A.2d 950, 951 (1992).

■ Clipper also challenges the award of attorney's fees to Checovich. The trial court awarded attorney's fees because "[t]he plaintiff's case . . . was brought without any reasonable basis in the facts provable by evidence." *See Keenan*, 130 N.H. at 502, 543 A.2d at 1383. We will not overturn the trial court's decision concerning attorney's fees absent an abuse of discretion. *Triesman*, 135 N.H. at 574–75, 607 A.2d at 951.

Although ultimately unsuccessful, Clipper's suit was not entirely frivolous. It attempted to prove that Checovich was developing the Huntington Common project while still a Clipper employee by prov-

ing Sternenberg's involvement and, through the use of circumstantial evidence, linking Checovich to Sternenberg. That Clipper was unsuccessful in proving such a theory of liability by itself does not warrant the award of attorney's fees.

Checovich argues in support of the award that Clipper brought suit with no direct evidence of his involvement in the competing project during the period in question. Although Clipper had only circumstantial evidence linking Checovich to Stockbridge and Sternenberg in the early stages of the development of Huntington Common, "the filing of pleadings[] frequently and necessarily occur[s] at a time when the declarant may not have access to information verifying or disproving the statements. The purpose of a judicial proceeding is to test the truth or falsity of allegations of criminal or wrongful conduct." *McGranahan v. Dahar*, 119 N.H. 758, 762, 408 A.2d 121, 124 (1979). Moreover, the record contains sufficient evidence, albeit circumstantial, to overcome the contention that even after discovery was completed, the lawsuit was entirely frivolous. Accordingly, the trial court's awarding attorney's fees to Checovich, as it did, was improper on the facts before us.

Clipper also challenges the award of costs, time loss and expenses, expert witness fees, and enhanced compensatory damages to Checovich. To the extent that any of the award was based on the verdict for Checovich on his counterclaim, it was improper. Accordingly, we remand for a determination of what part, if any, of this award is appropriate, consistent with this opinion.

*Affirmed in part; reversed in part; remanded.*

All concurred.