Brown v. Greenfield, et al.          CV-00-359-M    03/26/02
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Julie Brown, m/n/f of
Christopher B.,
      Plaintiff

      v.                              Civil No. 00-359-M
                                      Opinion No. 2002 DNH 066
Town of Greenfield, New Hampshire
Gary Gagnon, and Mitchell Foster,
      Defendants


                          **O R D E R**


      Julie Brown, mother of Christopher B., brings this action

seeking compensation for injuries she claims her son suffered

when he was arrested and prosecuted for various relatively minor

criminal offenses.  At all times relevant to this proceeding,

plaintiff's son, Christopher, was a minor.


      The court previously dismissed count 1 of plaintiff's

complaint, in which she sought damages from two local newspapers

for allegedly violating her son's privacy rights under a state

statute, concluding that the statute did not confer a private

right of action.  Brown v. Greenfield, 2001 DNH 039 (D.N.H. March

14, 2001).  Subsequently, plaintiff voluntarily moved to

withdraw, with prejudice, her claims under 42 U.S.C. § 1983 (count 3). Consequently, what remain are plaintiff's four state law claims against the Town of Greenfield and two of its police officers: violation of N.H. Rev. Stat. Ann. ("RSA") 169-B:36, which prohibits the unauthorized disclosure of court records relating to juveniles (count 2); false imprisonment (count 4); malicious prosecution (count 5); and abuse of process (count 6).

## Background

On September 14, 1999, when he was sixteen years old, Christopher B. was involved in a public confrontation with a young woman, during which he shouted at her and called her derisive, vulgar names. A friend of the young woman came to her defense, engaging Christopher B. in a fight. When one of the defendants, Officer Mitchell Foster, arrived at the scene, Christopher B. fled in a white Mercury Cougar. The responding officer found the other young man covered with blood. Upon learning of the incident, the young woman's mother, Patricia Donovan, contacted the Greenfield Police Department and filed "a complaint in behalf of my minor child, Nicole Donovan, that on the date of September 14, 1999, Christopher Brown of Hancock, NH,

was present at Belmore Farms when he . . . proceeded to call my daughter malicious profanity," all of which Donovan asserted was in violation of RSA 644:2, New Hampshire's criminal statute prohibiting disorderly conduct.  Exhibit H to Defendants' memorandum (document no. 53).

Officer Foster investigated the matter and, among other things, obtained statements from several witnesses, including one from Donovan's daughter.  He then met with plaintiff, her son, and her husband.  During that meeting, Christopher admitted that he used loud, profane language toward Nicole Donovan, engaged in a fight with another young man, and left the scene, driving an automobile within 90 days of obtaining his operator's license without an adult present (conduct prohibited by New Hampshire law).  As a result of Foster's investigation, the witness statements, and Christopher's own confession, the police reasonably concluded that there was probable cause to believe that Christopher violated a state motor vehicle statute, as well as a local ordinance prohibiting disorderly conduct.[1]  See

---

[1]    Section 3, Chapter 3 of the Town of Greenfield's Town Ordinances provides that it shall be unlawful for any person to engage in disorderly conduct.  The ordinance defines disorderly conduct to include, among other things:

generally State v. Vandebogart, 139 N.H. 145, 163 (1994) ("Probable cause to arrest exists when the arresting officer has sufficient, trustworthy information to warrant a reasonable person to believe that the arrestee has committed a crime."). See also Beck v. State of Ohio, 379 U.S. 89, 91 (1964) (holding that probable cause to arrest exists when "the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.").

As an alternative to prosecution, Foster offered to place Christopher in a juvenile diversion program. Both Christopher and his parents declined. Accordingly, Foster completed three criminal complaints against Christopher, charging that he: (1)

---

> [E]ngaging in fighting or in violent, tumultuous or threatening behavior in a public place; or
>
> [D]irecting at another person, in a public place, obscene, derisive or offensive words which are likely to provoke a violent reaction on the part of an ordinary person.

Exhibit S to defendant's memorandum. The ordinance then provides that any person "found in violation of this ordinance may be fined not more than $100.00 (one hundred dollars) and/or not more than 20 hours of community services." Id.

violated a town ordinance prohibiting the use of offensive words; (2) violated a town ordinance prohibiting fighting; and (3) violated RSA 263:14, which prohibits a minor from operating a motor vehicle unaccompanied by an adult during the first 90 days following the issuance of his or her drivers' license. See, e.g., Exhibit M to defendants' memorandum, criminal complaints against Christopher B.; Exhibit N, arrest warrant for Christopher B.

Later, however, defendants learned that Patricia Donovan had apparently undergone a change of heart and, rather than urging the police to prosecute Christopher, she withdrew the complaint she had filed against him. Additionally, her daughter, Nicole Donovan, refused to testify against Christopher.[2]

---

[2]     Patricia Donovan is apparently well known to the Greenfield Police Department, having been arrested on at least three occasions and having sued the Town (unsuccessfully) several times, including a civil rights action against Chief Gagnon and the Town that was filed in this court. According to Gagnon, prior to September of 1999, he had received more than 160 pages of letters and e-mails from Donovan, as well as copies of additional letters she sent to town selectmen, in which Donovan complained of various actions undertaken by police officers. Plainly, there is some animosity between Donovan and town officials, but exactly why she suddenly chose to withdraw the complaint she filed against Christopher B., or why her daughter refused to cooperate with the police in their efforts to prosecute him for disorderly conduct is entirely unclear.

Shortly thereafter, Chief Gagnon dropped the two charges that alleged Christopher violated the town ordinance. He did, however, continue to prosecute the motor vehicle charge. Nevertheless, because the prosecution apparently had difficulty presenting admissible evidence concerning Christopher's age, the state trial court concluded that the prosecution failed to establish one of the essential elements of the charge. Christopher was, therefore, acquitted. This suit ensued.

## Discussion

I.   Count 1 - Violation of RSA 169-B:36.

In count two of her complaint, plaintiff says she is entitled to damages caused by defendants' having unlawfully released Christopher's name (and the charges lodged against him) to the local media, allegedly in violation of RSA 169-B:36. By prior order, the court dismissed plaintiff's related claims against two local newspaper publishers for alleged violations of RSA 169-B:37. Specifically, the court concluded that the statute at issue did not create a private right of action against those who allegedly violate its provisions. For essentially the same reasons articulated in that order, the court concludes that RSA

169-B:36 does not create a private cause of action for civil damages.  See Brown v. Greenfield, 2001 DNH 039 (D.N.H. March 14, 2001).  See also Marquay v. Eno, 139 N.H. 708 (1995).

Moreover, even if the statute did admit of an implied private right of action against those accused of having violated its provisions (which it does not), plaintiff has failed to demonstrate that the circumstances underlying her claims would place them outside the scope of the statutory exception set forth in RSA 169-B:32.  That exception provides, in relevant part:

> This chapter shall not be construed as applying to persons 16 years of age or over who are charged with the violation of a motor vehicle law, . . . . or any town or municipal ordinance which provides for a penalty not exceeding $100 plus the penalty assessment.

RSA 169-B:32.  Here, Christopher B. was over 16 years of age at the time of the incidents giving rise to charges being filed against him and he was charged with violating a state motor vehicle statute and a local ordinance that provides for monetary penalties not exceeding $100.  Thus, the statutory exception

would certainly seem to apply and, perhaps more importantly, plaintiff has failed to show that it does not.[3]

II.  Count 4 - False Imprisonment.

While plaintiff appears to concede that there was probable cause to arrest (and prosecute) Christopher for having violated the motor vehicle statute, she says Christopher's detention was, nonetheless, unlawful because defendants lacked probable cause to arrest him for having violated the town ordinance.  A critical element of that argument is plaintiff's assertion that the town ordinance is invalid (a point discussed more fully below).  Consequently, says plaintiff, there can never be probable cause to arrest someone for allegedly violating it.  See generally Plaintiff's memorandum (document no. 55) at 10-11.  Even if the court were to credit that argument, the fact remains that defendants plainly had probable cause to detain Christopher for his admitted violation of the state motor vehicle statute.  In

---

[3]     Plaintiff asserts (without any developed argument or citation to authority) that because the penalty provisions of the town ordinance provide for imposition of up to 20 hours of community service, the ordinance does not fall within the scope of the statutory exception set forth in RSA 169-B:32 (i.e., it provides a penalty that exceeds $100).  For the reasons discussed more fully below, the court rejects that argument.

fact, defendants applied for and obtained a warrant for Christopher's arrest, based upon, among other things, his alleged violation of that statute.[4]

The New Hampshire Supreme Court has defined false imprisonment as "the unlawful restraint of an individual's personal freedom." Welch v. Bergeron, 115 N.H. 179, 181 (1975). An essential element of a false imprisonment claim is, therefore, "the absence of valid legal authority for the restraint imposed." Id. Because a valid warrant issued for Christopher's arrest, there can be no viable claim against defendants for false imprisonment. See, e.g., Lattime v. Town of Seabrook, No. 98-

---

[4] With virtually no legal or factual development, plaintiff asserts that the arrest warrant was invalid. Specifically, plaintiff says that because "Debra Nutting is a friend of Officer Foster," she was not a neutral and detached magistrate. See Plaintiff's memorandum at 16. That argument requires little discussion. See generally Lusby v. Union Pacific R. Co., 4 F.3d 639, 642 (8th Cir. 1993) ("[W]e take this opportunity to remind counsel that 'it is not this court's job to research the law to support an appellant's argument.' When a point is argued but unsupported by citations and authorities, the court might well decide not to trouble itself with independent research, and reject the point on its merits, depending on the nature of the issue.") (citations omitted). It is enough to note that, without more, an unsupported claim that the officer seeking an arrest warrant and the Magistrate issuing the warrant are "friends" is wholly insufficient to support the conclusion that the arrest warrant was invalid.

181-M, slip op. at 19 (D.N.H. July 12, 1999) ("Where plaintiff's arrest was based on probable cause, and more particularly, on a warrant supported by probable cause, she cannot prevail on her state law false arrest claim.") (citing Welch v. Bergeron, supra).

III. Count 5 - Malicious Prosecution.

Defendants assert that, with regard to plaintiff's malicious prosecution claim, they are entitled to prosecutorial immunity. Plaintiff disputes that claim, saying, in essence, that because the town ordinance under which Christopher was charged is invalid, and because defendants knew the ordinance was invalid, they lacked probable cause (and a good faith basis) to charge Christopher with violating it. That, says plaintiff, is sufficient to divest defendants of the cloak of prosecutorial immunity. For the sake of simplicity, the court will assume (without deciding) that, under the circumstances alleged, defendants are not entitled to prosecutorial immunity. Accordingly, the court will turn to a discussion of the essential elements of plaintiff's malicious prosecution claim.

To prevail on a claim of malicious prosecution under New Hampshire common law, a plaintiff must establish that he or she "was subjected to a criminal prosecution instituted by the defendant without probable cause and with malice, and that the criminal proceeding terminated in his favor." Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973). Here, there is no dispute that the charges against Christopher based on the local ordinance were resolved in his favor, when, in the wake of Donovan's withdrawal of her complaint and her daughter's refusal to cooperate with the prosecution, Chief Gagnon decided not to pursue those charges. Consequently, the court must focus on the first two elements of plaintiff's malicious prosecution claim: defendants' alleged lack of probable cause to institute those proceedings and Gagnon's alleged malice toward Christopher.

With regard to the latter element of her claim, plaintiff says Gagnon's alleged malice is revealed by the fact that he pursued the charges against Christopher only after Christopher and his parents rejected the offer to place him in a juvenile diversion program. And, as to Gagnon's alleged lack of probable cause to pursue those charges, plaintiff says that "the Town

11

ordinances are void because the Town has no authority under New Hampshire law, RSA 31:39 to enact a disorderly [conduct] statute." Plaintiff's memorandum at 11. Consequently, she asserts that "there can be no probable cause for it's violation." Id.

Simply stated, plaintiff's evidence and legal argument are insufficient to forestall summary judgment. Aside from her bald assertion that Gagnon acted with malice, she offers no evidence supportive of that claim other than the simple fact that, when plaintiff rejected the offer to place Christopher in a juvenile diversion program, Gagnon continued to prosecute the alleged violations of the local ordinance. Plainly, something more is necessary to create a genuine issue of material fact as to Gagnon's subjective motivation in prosecuting Christopher. The mere fact that a prosecution proceeds forward after a defendant rejects a plea offer is, standing alone, insufficient to warrant the conclusion that the prosecutor was motived by malice. To the contrary, Gagnon's offer to resolve the matter through diversion rather than prosecution (an entirely discretionary matter) tends to belie any charge of malice. That Christopher and his parents

12

chose prosecution over diversion may speak to their judgment, but does not reflect malice by Gagnon.

Plaintiff's assertion that the local ordinance is invalid is equally unpersuasive.  In support of that claim, plaintiff simply says:

> The subject matter of the ordinance enacted by the Town of Greenfield that prohibits conduct classified as disorderly conduct was not authorized by New Hampshire RSA 31:39.  <u>Nowhere in New Hampshire law are towns authorized to regulate conduct that involves fighting or the use of obscene words</u> which is what the Town of Greenfield has attempted to do by the enactment of the ordinance.

Plaintiff's memorandum at 10 (emphasis supplied).  The court disagrees.  RSA 47:17 specifically authorizes municipalities to enact bylaws and ordinances that, among other things, are designed "to prevent any riot, noise, disturbance, or disorderly assemblages."  RSA 47:17 II.  That statute further authorizes municipalities to "restrain and punish . . . all kinds or immoral and obscene conduct."  RSA 47:17 XIII.

Thus, contrary to plaintiff's largely unsupported assertions, the New Hampshire legislature plainly vested the Town

13

of Greenfield with authority to pass a local ordinance of the sort challenged here. Whether that ordinance might be invalid for other reasons (say, for example, overbreadth or inconsistency with the First Amendment) is not addressed by plaintiff. Consequently, any such argument is deemed forfeited. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."). See also Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 668 (7th Cir. 1998) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted).

Simply stated, plaintiff has failed to establish that the local ordinance under which Christopher was charged is invalid or otherwise void as an unlawful exercise of the municipal police power by the Town of Greenfield. Thus, she has failed to support her claim that defendants lacked probable cause to charge Christopher with violating that ordinance. Finally, she has failed to introduce sufficient evidence to permit a rational

14

trier of fact to conclude, by a preponderance, that Gagnon acted with malice when he pursued those charges against Christopher.

Defendants are probably correct in asserting that they are entitled to absolute prosecutorial immunity from plaintiff's malicious prosecution claim. See generally Belcher v. Paine, 136 N.H. 137, 144-47 (1992). Nevertheless, even if they are not, because plaintiff failed to present evidence sufficient to create a genuine issue of material fact as to two essential elements of her malicious prosecution claim - lack of probable cause and malice - defendants are entitled to judgment as a matter of law.

IV.  Count Six - Abuse of Process.

In Long v. Long, 136 N.H. 25 (1992), the New Hampshire Supreme Court adopted the definition of abuse of process set forth in the Restatement (Second) of Torts, section 682: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Long, 136 N.H. at 29 (emphasis supplied). Comment b to that section of the Restatement provides:

15

> "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm.

Restatement (Second) of Torts § 682, cmt. b.

More recently, in Clipper Affiliates v. Checovich, 138 N.H. 271 (1994), the Court described abuse of process as follows:

> The tort comprises two essential elements: an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Id., at 276-77 (emphasis supplied) (citation and quotation marks omitted).

16

Because it is somewhat confusing, plaintiff's abuse of process claim is perhaps best described in her own words:

The Defendants used the criminal process against Christopher B. because he refused to participate in the Juvenile Diversion Program. Assuming arguendo that the Town ordinance is valid, its violation would constitute a misdemeanor because it contained a community service provision. According to the New Hampshire Criminal Code, RSA 629:9 V, a violation outside of the code is defined as an offense in which there is no other penalty provided other than a fine, forfeiture or other civil penalty. The ordinance enacted by the Town of Greenfield imposes twenty (20) hours of community service which places the ordinance outside of the definition of a violation under New Hampshire law, and therefore constitutes a misdemeanor. Since the Town ordinance was a misdemeanor and since Christopher B. was under seventeen (17) years of age at the time of the alleged commission of the offense he was entitled to be treated as a juvenile under RSA 169-B:1, and 169-B:2 VI, and entitled to all the privileges that a juvenile is accorded under New Hampshire law, including, but not limited to, the confidentiality aspects of RSA 169-B:35.

* * *

Despite the fact that the Defendants had no legal authority to treat Christopher B. as an adult for committing a misdemeanor, they charged him as an adult because he would not participate in the Juvenile Diversion Program. This is a classic case of utilizing a legal process for which it was not intended in an effort to accomplish an ulterior motive.

Plaintiff's memorandum at 14-15.

17

It is, perhaps, worth noting that, contrary to plaintiff's assertion, nothing in the record suggests that defendants knowingly charged Christopher "as an adult for committing a misdemeanor." Plaintiff's memorandum at 15. For example, the complaints filed against Christopher all bear a check mark in the box labeled "violation," establishing that defendants thought (and intended that) the charges leveled against Christopher were, in fact, violations and not misdemeanors. See Exhibit M to defendants' memorandum. Moreover, even if plaintiff had shown that defendants erroneously charged Christopher as an adult, she has failed to identify exactly what "collateral advantage" defendants sought to obtain by their conduct, or how they attempted to "coerce" or "extort" anything of value from him or them. Instead, she seems to suggest that defendants pursued those charges in response to Christopher's rejection of the plea offer. If that is plaintiff's claim, it would not appear to fall within the scope of "coercion to obtain a collateral advantage, not properly involved in the proceeding itself." Clipper Affiliates, 138 N.H. at 276 (emphasis supplied). Plainly, the act of prosecuting an individual after he or she rejects a plea offer cannot be said to constitute conduct "not properly involved

18

in proceeding itself."  Rather, it is typically an entirely appropriate (and permissible) response to a defendant's decision not to accept a proffered plea agreement.

Nevertheless, looking beyond those shortcomings in plaintiff's abuse of process claim, it is clear that the linchpin to that claim (at least as plaintiff sees it) is her assertion that the town ordinance pursuant to which Christopher was charged constitutes a misdemeanor, rather than simply a violation.  And, subsumed within that claim is the assertion that, under New Hampshire law, any offense that may be punished by the imposition of community service is necessarily either a misdemeanor or felony; in plaintiff's view, those convicted of violations cannot be required to perform community service.  Again, the court disagrees.

The New Hampshire Criminal Code defines a violation as an offense:

> so designated by statute within or outside this code
> and, except as provided in this paragraph, any offense
> defined outside of this code for which there is no
> other penalty provided other than a fine or fine and
> forfeiture or other civil penalty.

19

RSA 625:9 V. The Code then provides that any person convicted of a violation, "may be sentenced to conditional or unconditional discharge, or a fine." RSA 651:2 III-a. Finally, the Code provides that:

> A person may be sentenced to a period of conditional discharge if such person is not imprisoned and the court is of the opinion that probationary supervision is unnecessary, but that the defendant's conduct should be according to conditions determined by the court. Such conditions may include:
>
> * * *
>
> (4) Performance of uncompensated public service as provided in RSA 651:68-70.

RSA 651:2 VI (a). Plainly, then, New Hampshire's Criminal Code contemplates that violations may be punished by, among other things, a conditional discharge that includes a community service component. See, e.g., RSA 126-K:6 (providing that any minor who unlawfully possesses tobacco products "shall be guilty of a violation and shall be punished by a fine not to exceed $100 for each offense or shall be required to complete up to 20 hours of community service for each offense, or both.") (emphasis supplied).

20

In short, the New Hampshire Criminal Code treats the imposition of monetary fines and the requirement that an individual perform uncompensated community service as substantially similar forms of punishment. And, the fact that a criminal offense imposes community service as a potential penalty does not, standing alone, compel the conclusion that the offense is necessarily either a misdemeanor or felony; violations can be punished by the imposition of a community service requirement.

Because plaintiff's abuse of process claim (at least as she has postured it) turns on her assertion that the offenses with which Christopher was charged are misdemeanors, rather than violations, and because she has failed to demonstrate the validity of that assertion, defendants are entitled to summary judgment as to that claim.

## Conclusion

For the reasons set forth above, there are no genuine issues of material fact and defendants have demonstrated that they are entitled to judgment as a matter of law as to all claims asserted against them. Defendants' motion for summary judgment (document

21

no. 51) is, therefore, granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 26, 2002

cc:  William E. Aivalikles, Esq.
     John P. Sherman, Esq.