USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-2281 HECTOR GUZMAN-RIVERA, ET AL., Plaintiffs, Appellees, v. HECTOR RIVERA-CRUZ, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, Senior U.S. District Judge] __________________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Jose R. Gaztambide, with whom Luis A. Plaza and Elisa Bobonis ___________________ ______________ ______________ Lang were on brief for appellants. ____ Victoria A. Ferrer, with whom Alvaro R. Calderon, Jr. and Alvaro __________________ ________________________ ______ R. Calderon, Jr. Law Offices were on brief for appellees. ____________________________ ____________________ May 31, 1995 ____________________ BOWNES, Senior Circuit Judge. This is the second BOWNES, Senior Circuit Judge. _____________________ time that this civil rights action has been before us. After being arrested, convicted, and imprisoned for a murder that he did not commit, plaintiff-appellee Hector Guzman Rivera (joined by several family members) sued the Secretary of Justice of Puerto Rico and two other Justice Department officials under 42 U.S.C. 1983, alleging that the defendants failed to timely reinvestigate the facts of the murder after his conviction, and that they failed to move for his release even after their investigation had established his innocence. In Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3 (1st _____________ ___________ Cir. 1994) (Guzman I), we reversed the district court's ________ dismissal of Guzman's suit on statute of limitations grounds. The defendants did not assert absolute immunity as an alternative ground for affirmance, although that defense had been raised below. On remand, just six days before trial was scheduled to begin, the defendants filed an "Urgent Motion for Relief" seeking summary judgment on absolute immunity grounds. We are left to wonder why absolute immunity was originally pled as a defense, abandoned in the initial appeal, and then resurrected as an emergency on remand. The district court nevertheless denied the motion on the merits, finding genuine issues of material fact as to the nature of the defendants' post-conviction activities. We -2- 2 therefore do not consider the absolute immunity defense waived; it is the sole issue on appeal. From the facts presented in this appeal, we find that the defendants are not entitled to absolute immunity for any delays or inadequacies in their conduct of the investigation. We also find, however, that they are absolutely immune for their post- ____ investigation failure to go into court to seek Guzman's release. I. __ We shall assume, as we did in Guzman I, 29 F.3d at ________ 5, that the plaintiffs' allegations regarding the defendants' authority, duties, acts and omissions are true, and that they are sufficient to allege a violation of federal rights. See ___ Buckley v. Fitzsimmons, 113 S. Ct. 2606, 2609 (1993). _______ ___________ Guzman was convicted of a 1987 murder in Carolina, Puerto Rico, and sentenced to 119 years' imprisonment on June 27, 1989. Beginning on August 21, 1989, his father, Guzman Fernandez, repeatedly corresponded with or met with the defendants: Hector Rivera Cruz, the Secretary of Justice (Puerto Rico's equivalent of a state attorney general); Luis Feliciano Carreras, Director of the Justice Department's Prosecutor's Office and a high-ranking official of the Civil Rights Division; and Carreras' successor, Pedro Geronimo Goyco. Based on his own investigation, which yielded powerful evidence that his son was innocent, Guzman Fernandez -3- 3 requested that defendant Luis Feliciano Carreras order a reinvestigation of the murder. Carerras referred the matter to an attorney with the Civil Rights Division, but refused to do anything more. After several months of stonewalling, the Civil Rights Division finally investigated Guzman's case. Investigators interviewed three of the true murderer's co- conspirators, who unanimously stated that Guzman was innocent. The head of the Civil Rights Division reviewed the findings of the investigation and concluded that Guzman was innocent. Defendants Pedro Geronimo Goyco and Hector Rivera Cruz refused, however, to move for Guzman's release until the murderer was captured. On June 11, 1990, Guzman Fernandez told of his son's plight on Puerto Rico television. Several days later, he appealed to the Governor of Puerto Rico. The Governor allegedly ordered defendant Geronimo Goyco to release Guzman. The defendants instructed Guzman's attorneys to file a motion for a new trial under Rule 192.1 of the Puerto Rico Rules of Criminal Procedure. The motion was filed on June 15, 1990, and Guzman was released the same day. II. ___ Qualified immunity is the defense ordinarily available to public officials who are sued under 42 U.S.C.  1983. Absolute immunity, by contrast, is reserved for the -4- 4 "'special functions'" of certain officials that resemble functions that would have been immune at common law when  1983 was enacted. Buckley, 113 S. Ct. at 2613 (quoting Butz _______ ____ v. Economou, 438 U.S. 478, 508 (1978)). In determining ________ whether a particular act fits within the common-law tradition of absolute immunity, the Supreme Court takes a "functional approach," Burns v. Reed, 500 U.S. 478, 486 (1991), examining _____ ____ "'the nature of the function performed, not the identity of the actor who performed it.'" Buckley, 113 S. Ct. at 2613 _______ (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). _________ _____ Under the functional approach, it is immaterial that the defendants were prosecutors ex officio. Absolute __ _______ immunity protects the prosecutor's "'role as advocate for the State,'" and not his or her role as an "'administrator or investigative officer.'" Burns, 500 U.S. at 491 (quoting _____ Imbler v. Pachtman, 424 U.S. 409, 430-31, 431 n.33 (1976)). ______ ________ Prosecutorial conduct is absolutely immune only if it is ____ "intimately associated with the judicial phase of the criminal process . . . ." Imbler, 424 U.S. at 430-31 ______ (holding that state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial). See also ___ ____ Buckley, 113 S. Ct. at 2614; Celia v. O'Malley, 918 F.2d _______ _____ ________ 1017, 1019 (1st Cir. 1990) ("a prosecutor enjoys absolute -5- 5 immunity from suit based on actions taken pursuant to his quasi-judicial function"). We begin by dividing the defendants' challenged conduct into two phases: (1) the delay in performing the post-trial investigation, including any inadequacies in the investigation itself; and (2) the failure to go to court to obtain Guzman's release after the investigation had established his innocence. As the defendants moved from (1) to (2), and as the evidence of Guzman's innocence mounted, their acts became increasingly associated with the judicial phase of the criminal process. To illustrate: once Guzman's innocence was established, the defendants could obtain his release only by filing a motion to dismiss the criminal action, or by acquiescing in Guzman's own motion for a new trial. Looking backwards from this endpoint, we might characterize (1), the post-trial investigation, as a preparatory step for (2), the in-court exercise of the prosecutorial function. The defendants seem to think that absolute immunity extends to all conduct that facilitates the prosecutorial function. The functional analysis, however, requires us to draw a line between preparatory conduct that is merely administrative or investigative, and that which is itself prosecutorial. For example, some, but not all, of the prosecutor's preparatory acts in initiating a prosecution and -6- 6 presenting the State's case are absolutely immune. See ___ Imbler, 424 U.S. at 431 n.33; Burns, 500 U.S. at 492-96 (no ______ _____ absolute immunity for prosecutor's legal advice to police that there was probable cause for an arrest); Buckley, 113 S. _______ Ct. at 2615-17 (no absolute immunity for prosecutors' conspiracy to manufacture false evidence that was later introduced at grand jury proceedings and at trial, or for a prosecutor's out-of-court statements to the press). Cf. ___ Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th ________ ______________________ Cir. 1991) ("[A]bsolute immunity may attach even to . . . administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his _________ function as an officer of the court.") (emphasis added; citations and internal quotation marks omitted). The prosecutorial nature of an act does not spread backwards like an inkblot, immunizing everything it touches. See Burns, 500 ___ _____ U.S. at 495 ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive."). We do not think that absolute immunity should extend to the preparatory conduct in this case. The investigators of the Civil Rights Division, whose actions have been imputed to the defendants, actively gathered and -7- 7 corroborated evidence of Guzman's innocence. These are functions typically performed by police officers and detectives. By contrast, the prosecutor-as-advocate "evaluat[es] evidence and interview[s] witnesses as he ___________ ______ prepares for trial . . . ." Buckley, 113 S. Ct. at 2616 ___________________ _______ (emphasis added). It is not the prosecutor's usual office to uncover evidence in the first instance, before s/he has cause to initiate a post-trial judicial proceeding. And to the extent that prosecutors do so act, they are not performing a function "intimately associated with the judicial phase of ________ the criminal process . . . ." Imbler, 424 U.S. at 430 ______ (emphasis added). Our functional analysis draws upon Buckley, a pre- _______ trial immunity case, in which the Supreme Court denied absolute immunity to prosecutors who had conspired to manufacture false evidence before there was probable cause to arrest the suspect. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Id. at 2616 (citation and internal quotation ___ marks omitted). The prosecutors in Buckley were not _______ functioning as advocates for the state, but in an "entirely investigative" capacity, inasmuch as they lacked probable cause to arrest the suspect or initiate judicial proceedings -8- 8 during that period. Id. "A prosecutor neither is, nor ___ should consider himself to be, an advocate before he has probable cause to have anyone arrested." Id. ___ This case mirrors Buckley in the post-trial _______ context. It is undisputed on appeal that no post-conviction proceeding was pending at the time of the civil rights investigation. Although the investigation ultimately gave the defendants cause to move to reopen the criminal proceedings -- i.e., to resume their role as "advocate[s] for ____ the [Commonwealth]," Imbler, 424 U.S. at 431 n.33 -- this was ______ only one of several possible outcomes. The investigation might have found nothing at all. Or, it might have exposed evidence of prosecutorial misconduct, such as the withholding of potentially exculpatory material, but no conclusive evidence of Guzman's innocence. Neither result would require the defendants to perform a quasi-judicial function in Guzman's case. Only with the benefit of hindsight can the defendants marry the investigation to the exercise of a quasi-judicial function. See Buckley, 113 S. Ct. at 2616 ___ _______ (noting that prosecutors lacked "probable cause . . . to initiate judicial proceedings" during period of their challenged conduct). Accordingly, the civil rights investigation had only an attenuated and contingent, as opposed to "intimate[]," association with the judicial phase of the criminal process. Imbler, 424 U.S. at 430. ______ -9- 9 We note several other reasons for not extending absolute immunity to any delays or inadequacies in the civil rights investigation. First, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns, 500 U.S. at _____ 486. The defendants here have not identified any historical or common-law support for extending absolute immunity to the conduct of a civil rights investigation that is only contingently associated with the judicial phase of the criminal process. "Absent a tradition of immunity comparable to the common-law immunity from malicious prosecution," the Supreme Court has "not been inclined to extend absolute immunity from liability under 1983." Id. at 493 (citing ___ Malley v. Briggs, 475 U.S. 335, 342 (1986)). ______ ______ Second, to the extent that the defendants were functioning as officials of the Civil Rights Division, they were not acting purely as advocates for the Commonwealth, but partly to vindicate Guzman's civil rights. The mixed purpose of the civil rights investigation reflects the defendants' own mixed functions. This factor also tends to separate their conduct from the judicial phase of the criminal process. Third, had the defendants been civil rights officials only, it seems unlikely that they would be entitled to absolute immunity for the investigation itself. The -10- 10 defendants should not enjoy absolute immunity for the same conduct merely because they happen also to direct the Prosecutor's Office. Cf. Burns, 500 U.S. at 495 (finding it ___ _____ "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice"); Buckley, 113 S. Ct. at 2617 n.6 ("If the police, _______ under the guidance of the prosecutors, had solicited the allegedly 'fabricated' testimony . . . they would not be entitled to anything more than qualified immunity."); Houston _______ v. Partee, 978 F.2d 362, 367 (7th Cir. 1992) (prosecutors ______ who, acting solely as investigators, acquired and withheld exculpatory evidence after their role in the prosecution had ended, are "not entitled to any more immunity than the defendant police officers"), cert. denied, 113 S. Ct. 1647 _____ ______ (1993). Finally, although every denial of absolute immunity potentially exposes prosecutors to additional litigation, our analysis cannot be driven by "a generalized concern with interference with an official's duties . . . ." Burns, 500 _____ U.S. at 494. "Absolute immunity is designed to free the judicial process from the harassment and intimidation _________________ associated with litigation." Id. It is reserved for ___ "actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing -11- 11 conduct." Id. We think that the defense of qualified ___ immunity is sufficient to protect prosecutors who, like the defendants, conduct a post-conviction, civil rights investigation. III. ____ These considerations do not apply to the defendants' failure to move for the dismissal of Guzman's case at the close of the investigation. Guzman does not ___ allege that the defendants withheld exculpatory evidence from him, thereby delaying his own motion for a new trial. See ___ Houston, 978 F.2d at 365 (denying absolute immunity where _______ claim was based squarely on failure to disclose exculpatory evidence to the defense). In effect, the plaintiffs' sole post-investigation claim is that the defendants failed to go to court as prosecutors to undo Guzman's conviction. Even if it were shown that the defendants reviewed the evidence, found Guzman innocent, and did nothing, their decision withal not to dismiss his criminal case lies at the heart of the prosecutorial function. See Imbler, 424 U.S. at ___ ______ 431 n.33 (noting that the duties of a prosecutor as an advocate for the State include the decision whether to dismiss an indictment against particular defendants). Cf. ___ Harrington v. Almy, 977 F.2d 37, 42 n.3 (1st Cir. 1992) (the __________ ____ decision to prosecute or not falls within "the precise zone of decision-making the Supreme Court has placed at the center -12- 12 of the immunity doctrine"). After all, the decision not to dismiss complements the initial decision to prosecute, and the prosecutor's absolute immunity for the latter is well settled. For the reasons cited in Imbler, 424 U.S. at 424- ______ 27, dismissal decisions fit within the same tradition of common law immunity as charging decisions; both are entitled to absolute immunity under 1983. Otherwise, a 1983 plaintiff would simply recast a suit for malicious prosecution as one for failure to dismiss. Although the alleged omission is reprehensible, we hold that the defendants are absolutely immune from civil damages liability for their post-investigation failure to move for Guzman's release. IV. ___ Because the undisputed facts show that the defendants are not entitled to absolute immunity for their conduct of the civil rights investigation, the district court's order denying the defendants' motion for summary judgment is affirmed. The case is remanded for proceedings ________ ________ consistent with this opinion. -13- 13