Bryant v. Noether, et al.          CV-00-191-M    03/30/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Richard Bryant,
       Plaintiff

       v.                              Civil No.   00-191-M
                                       Opinion No. 2001 DNH 064
Lauren Noether, in her
Individual and Official Capacity,
Sheriff Stephen Hodges, in his
Individual and Official Capacity,
Deputy Richard Batstone, in his
Individual and Official Capacity,
Chief Michael McCarty, in his
Individual and Official Capacity,
Sgt. Karen McCarty, in her
Individual and Official Capacity,
Sgt. Brian Loanes, in his
Individual and Official Capacity,
and New Beginnings,
       Defendants


**O R D E R**


       Pursuant to 42 U.S.C. § 1983 and New Hampshire common law,

Richard Bryant seeks redress for alleged violations of his civil

and common law rights arising from his arrest and prosecution for

assaulting his wife.  Two motions are before the court: (1)

Defendant Lauren Noether's Motion for Judgment on the Pleadings:

Prosecutorial Immunity (document no. 14), and (2) Defendants

Lauren Noether's, Stephen Hodges's, and Richard Batstone's

(collectively, the "county defendants") Motion for Judgment on the Pleadings & For Summary Judgment: Qualified Immunity and Collateral Estoppel (document no. 20). Noether also requests attorney's fees pursuant to 42 U.S.C. § 1988.

## Factual Background

Plaintiff, a Belmont, New Hampshire, police officer, was arrested on April 15, 1997, for assaulting his wife. His complaint alleges the following facts:

On the morning of April 15, 1997, plaintiff and his wife argued in their home. In the course of that argument, their heads collided and his wife hit him. Plaintiff left the home for a previously scheduled doctor's appointment, but returned when he realized he had forgotten his wallet.

Upon his return, plaintiff's wife was preparing to leave with their children, but followed him back into the house, continuing the argument. At some point during the resumed argument, plaintiff's wife threatened to report to the police that plaintiff "beat her."[1]

---

[1] Plaintiff's wife allegedly made a similar threat a year earlier during a similar altercation. Following that incident, plaintiff reported being assaulted by his wife to the Belmont

2

Plaintiff left the home again and, as he was walking to his car, his wife got into her car, revved her engine, and backed into him, knocking him to the ground. At this point, plaintiff also threatened to report his wife's conduct to the police. By the time he drove to the police department, however, he changed his mind and continued on to his doctor's appointment, without ever making a report.

Plaintiff's wife, on the other hand, apparently did not change her mind and filed a domestic violence petition ("DVP"). Based on the sworn statement in the DVP, the Laconia District Court granted her a temporary domestic violence protective order ("DVPO").

Given plaintiff's employment as a police officer, the Belknap County Sheriff's Office ("BCSO") was asked to serve the DVPO. Plaintiff's wife delivered the DVPO to a Sheriff's deputy, who in turn gave it to Deputy Richard Batstone for service. Batstone never saw or spoke to plaintiff's wife about the matter.

Following his medical appointment, plaintiff returned home. Shortly after he arrived, Batstone and Belmont Police Sgt. Brian

Police Department, who referred the matter to the Belknap County Sheriff's Office for appropriate action. The investigation was eventually terminated, at plaintiff's request.

3

Loanes pulled into his driveway. Batstone advised plaintiff that he was being taken into custody for assault. Loanes informed him that he had been placed on administrative leave by the Belmont Police Department ("BPD") and was required to turn over his service weapon, which he did.

While plaintiff was in the deputy's car, Batstone served him with the DVPO. Batstone admitted to plaintiff that while he did not have an arrest warrant and had not spoken with plaintiff's wife, he was nevertheless effecting an arrest based on information contained in the sworn petition supporting the DVPO. He also advised plaintiff that he had consulted Loanes and Sergeant Karen McCarty (also of the BPD), whom he viewed as "experts" in handling domestic matters. Batstone acknowledged that plaintiff's wife told the Sheriff's department that she did not want him arrested, but that he, nevertheless, made the decision to effect an arrest because he believed that action was required under the circumstances.

Plaintiff was released on bail, with an arraignment set for April 17, 1997. Batstone drove him home to gather personal belongings (the order precluded his continued presence in the house). They found plaintiff's wife at home. When she learned

4

of the arrest, she called Sheriff Stephen Hodges to find out why her husband had been taken into custody, rather than just served with the DVPO. Her protests did not affect the decision by the Sheriff's department, however, and from that point on, she refused to cooperate in her husband's prosecution.

The following day, plaintiff was ordered to appear before Chief Michael McCarty and Sergeant Loanes to discuss the incident, purportedly as part of an internal BPD investigation. Plaintiff both objected to Loanes' presence, and asked to have a union representative present, but the meeting continued as arranged. Chief McCarty tape-recorded the interview with plaintiff.

Plaintiff later learned from his wife that after she attempted to determine the reason for his arrest, and informed the Sheriff's department that she would not cooperate, Chief McCarty and Sgt. McCarty went to talk to her about the incident. According to his wife, the chief and sergeant knew she was in an unhealthy state, both mentally and physically (having gone days without sleep and being on medication). Plaintiff alleges she was led to believe that any information she provided would be used for internal purposes only, and that she had no choice but

5

to speak with them. The chief and sergeant then proceeded to obtain a written statement from his wife, which she contends was false and misleading.

Mrs. Bryant also told plaintiff that a counselor from New Beginnings, a women's crisis center, accompanied her when she filed the DVP, and coaxed her into making things seem worse than they actually were to ensure that an order would be issued.

On April 17, 1997, plaintiff's wife petitioned the court to withdraw the DVPO. Her petition was granted. She informed plaintiff, however, that someone allegedly had called the court to try to stop her from seeking the order's withdrawal. She later made repeated attempts to set the record straight, and refused to testify at her husband's trial (the criminal charges were still pending), despite the County Attorney's attempts to compel her testimony.

Belknap County Attorney Lauren Noether was responsible for prosecuting plaintiff's criminal case. She eventually negotiated a disposition with plaintiff and his attorney, under which the pending charges were nol prossed (thereby avoiding the risk of plaintiff suffering a criminal conviction), but on condition that plaintiff complete a course of marriage counseling.

6

## Standard of Review

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In reviewing such a motion, the court must credit all material allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. See Feliciano v. State of Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). The court may grant a motion for judgment on the pleadings only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. See Gaskell v. Harvard Cooperative Society, 3 F.3d 495, 497-98 (1st Cir. 1993). A pro se complaint, however, is held to "less stringent standards" than one drafted by an attorney, see, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976), and the court should deny a motion for judgment on the pleadings if the pro se's factual allegations support a claim that may be misnamed.

If "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges

7

into the pleadings and the trial court can review it . . . ." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). Furthermore, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c).

Here, the county defendants' motion is captioned as a "Motion for Judgment on the Pleadings & For Summary Judgment," and it includes attached affidavits from Noether and Batstone. Plaintiff's objection mirrors the county defendants' caption and also refers to matters outside the complaint, including a statement by Mrs. Bryant attached to the objection. Additionally, both parties recite the standard of review applicable to summary judgment, as well as the standard of review applicable to judgment on the pleadings. Accordingly, plaintiff has facially acknowledged that defendants alternatively move for summary judgment, and has probably had a "reasonable opportunity

to present all material made pertinent to [a motion for summary judgment]." See Fed. R. Civ. P. 12(c).

However, plaintiff objects to treating the motion as one for summary judgment because he failed to engage in discovery while proceeding pro se. Having since retained legal counsel, plaintiff now treats the motion as one for judgment on the pleadings only. Accordingly, the court will disregard additional material outside the pleadings and treat the county defendants' motion as one for judgment on the pleadings. But, because plaintiff's allegations are expressly dependant upon his wife's DVP and the resulting DVPO (copies of which were submitted with the county defendants' motion and not objected to by plaintiff) these documents are "effectively merge[d] into the pleadings" and considered without converting the motion to one for summary judgment. See Beddall, 137 F.3d at 17.

## Discussion[2]

"The crux of [p]laintiff's [c]omplaint alleges that, notwithstanding any false allegations made, the gist of the information contained in Mrs. Bryant's DVP does not constitute probable cause sufficient to justify the [p]laintiff's arrest and subsequent prosecution." Plaintiff's Memorandum in Opposition to Judgment on the Pleadings (document no. 24). On that basis, he argues that his arrest and prosecution violated his civil rights (Counts I and II), as well as his state common law rights (Counts III and IV). The county defendants argue that plaintiff's rights were not violated because there was probable cause to arrest and prosecute him. In the alternative, they argue that even if probable cause was lacking, they are entitled to immunity, either absolute or qualified, for their actions. Furthermore, the

---

[2]Only potential liability of the county defendants in their individual capacities will be discussed. Suits brought against parties in their official capacities are treated as suits against the municipality. See, e.g., Brandon v. Holt, 469 U.S. 464, 471 (1984). In order for a municipality to be liable under 42 U.S.C. § 1983, there must be a deprivation of constitutional rights resulting from "official action taken pursuant to a 'custom or usage' of the municipality." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16 (1st Cir. 1995). Here, plaintiff has not alleged any unconstitutional custom or usage. Accordingly, plaintiff cannot maintain § 1983 claims against the county defendants in their official capacities.

10

county defendants assert that plaintiff's probable cause argument is barred by the doctrine of collateral estoppel, and that he has failed to allege essential elements of his common law claims.

I.   42 U.S.C. § 1983

Title 42, section 1983 provides a civil remedy for the deprivation of constitutional rights by anyone acting under the color of law.  There is no dispute that the county defendants were acting under color of law in this case.  Accordingly, to survive the present motions, plaintiff need only allege facts which, if true, demonstrate that the county defendants' actions deprived him of federal rights.  However, under some circumstances, those alleged to have deprived a person of his rights are entitled to immunity.  See Imbler v. Pachtman, 424 U.S. 409, 418-19 (1976).  Immunity can be either absolute or qualified.  See id.

A.   County Attorney Noether: Absolute Prosecutorial
     Immunity

It is well settled that prosecutors enjoy absolute immunity for actions taken within the scope of their prosecutorial duties. See, e.g., Imbler, 424 U.S. at 422-23.  It is equally well

11

settled that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Id. at 431; see Burns v. Reed, 500 U.S. 478, 486 (1991); Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995). For absolute immunity to apply, the challenged conduct must be "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430; see Guzman-Rivera, 55 F.3d at 29. Absolute immunity does not, however, shield a prosecutor's acts as an administrator or investigator, but is limited to her role as an advocate for the state. See, e.g., Guzman-Rivera, 55 F.3d at 29.

Absolute prosecutorial immunity is necessary to protect the judicial process from "harassment by unfounded litigation [that] would cause a deflection of the prosecutor's energies from [her] public duties, and the possibility that [she] would shade [her] decisions instead of exercising the independence of judgment required by [her] public trust." Burns, 500 U.S. at 478 (citing Imbler, 424 U.S. at 423). The Supreme Court has acknowledged that "[absolute] immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the

12

alternative of qualifying a prosecutor's immunity would disserve the broader public interest."  Imbler, 424 U.S. at 427.

Count II, the only claim arguably brought against Noether, alleges she maliciously prosecuted plaintiff in violation of his constitutional rights.  However, the complaint does not allege that Noether participated in any stage of the process prior to charges being filed against plaintiff.  Plaintiff only complains about Noether's decision to proceed with the prosecution.  Accordingly, even if Noether was motivated by something other than a good faith belief in the merits of the case, and even if all of plaintiff's other allegations are accepted as true, because the decision to proceed with a prosecution is precisely the kind of official duty absolute prosecutorial immunity is designed to protect, see, e.g., Imbler, 424 U.S. at 431, plaintiff cannot, as a matter of law, maintain an action for damages against the prosecutor.[3]

---

[3]The court notes that plaintiff's stated claim, "Violation of Amendment XIV," cannot survive to the extent he claims a violation of a substantive due process right to be free from prosecution without probable cause.  See, e.g., Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999).  Because plaintiff filed his complaint pro se, the court considered the extent to which he may be asserting Fourth Amendment rights and/or raising a state claim.  However, absolute prosecutorial immunity would also apply to such claims.  See Belcher v. Paine, 136 N.H. 137, 147 (1992) (absolute immunity under state law).

13

B.    The Remaining County Defendants - Batstone & Hodges

Plaintiff complains that the remaining county defendants are liable to him under § 1983 because they violated his Fourth Amendment rights.  The Fourth Amendment guarantees the freedom of every citizen to be free from unreasonable searches and seizures.  Ordinarily, an arrest warrant, issued by an impartial magistrate or judge, must be obtained before an arrest is made.  See, e.g., Gerstein v. Pugh, 420 U.S. 103, 112 (1974).  However, in some situations, an arrest may be effected without a warrant, if probable cause exists to believe a crime has been committed by the arrested person.  See id. at 113.  In addition, New Hampshire law provides:

> An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever:
>             . . .
> (b) He has probable cause to believe that the person to be arrested has within the past 6 hours committed abuse as defined in RSA 173-B:1, I against a person eligible for protection from domestic violence as defined in RSA 173-B:1, . . . .

N.H. Rev. Stat. Ann. (RSA) ch. 594:10, I (Supp. 2000) (effective July 3, 1993).  RSA 173-B:1 defines "abuse," in pertinent part as:

[T]he occurrence of one or more of the following acts between family or household members or current or former sexual or intimate partners:
     (a) Attempting to cause or purposely or recklessly causing bodily injury or serious bodily injury with or without a deadly weapon under any of the circumstances outlined in RSA 631:1 [(First Degree Assault)], 631:2 [(Second Degree Assault)], or 631:2-a [(Simple Assault)]; . . . .

RSA 173-B:1, I (1994). In this case, plaintiff was arrested and charged with simple assault, defined as:

I.   A person is guilty of simple assault if he:
     (a) Purposely or knowingly causes bodily injury or unprivileged physical contact to another; or
     (b) Recklessly causes bodily injury to another; or
     (c) Negligently causes bodily injury to another by means of a deadly weapon.
II.  Simple assault is a misdemeanor unless committed in a fight entered into by mutual consent, in which case it is a violation.

RSA 631:2-a (1996).

     Because each remaining county defendants' role in plaintiff's arrest was somewhat different, each will be discussed separately.

15

1.    Deputy Batstone

Batstone was the Sheriff's deputy who made the decision to arrest plaintiff after reviewing the DVP, and accompanying DVPO, and after consulting BPD officers responsible for domestic violence matters.  Plaintiff says Batstone's decision to arrest was based solely on the information contained in the DVP, and that the DVP's content did not supply probable cause.  Accordingly, at least with respect to Batstone, the only question is whether the DVP, and accompanying protective order, were sufficient to provide him with probable cause to believe plaintiff had "[p]urposely or knowingly cause[d] bodily injury or unprivileged physical contact to [his wife]; or . . . [r]ecklessly cause[d] bodily injury to [his wife] . . . ." See RSA 631:2-a.


a.    Collateral Estoppel

As an initial matter, the county defendants argue that plaintiff is precluded, under the doctrine of collateral estoppel, from litigating the existence of probable cause because that issue was previously resolved against him.

16

"Federal courts are bound by state law on the preclusive effect of state judgments." <u>Commercial Associates v. Tilcon Gammino, Inc.</u>, 998 F.2d 1092, 1096 (1st Cir. 1993). Accordingly, the court shall apply the New Hampshire standard for collateral estoppel, which precludes a party from re-litigating an issue previously decided on the merits when the current party had a full and fair opportunity to be heard, or was in privity with a party who had such an opportunity. <u>See, e.g.</u>, <u>In re Alfred P.</u>, 126 N.H. 628, 629 (1985). The issue must actually be raised and determined on the merits. <u>See</u> <u>id.</u>

Defendants assert that plaintiff is estopped from litigating the probable cause issue because (1) in issuing the DVPO, the Laconia District Court necessarily found by a preponderance of the evidence that plaintiff had physically abused his wife[4] and (2) plaintiff did not raise the issue during his criminal trial.

Both arguments fail. First, plaintiff was not a party to the <u>ex parte</u> proceeding, which led to the issuance of the

_____

[4]The county defendants rely on the version of RSA 173-B:4 in effect at the time of plaintiff's arrest which provided, in pertinent part, "Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse . . . ." RSA 173-B:4 (1994) (amended 1999). As will be discussed below, <u>see</u>, <u>infra</u>, footnote 5, their reliance on this statutory provision is misplaced.

17

temporary DVPO by the Laconia District Court. Nor was he in privity with his wife or the state, with regard to the domestic violence proceeding. Second, failure to raise the issue during his criminal proceedings does not trigger collateral estoppel because the issue was not determined on the merits. See Alfred P., 126 N.H. at 629. Accordingly, plaintiff can raise the issue of whether probable cause existed to arrest him.

### b. Probable Cause

"[P]robable cause exists when the facts and circumstances within the [arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (internal citations, alterations, and quotation marks omitted). Probable cause does not require the facts and circumstances within the officer's knowledge to "be sufficient to prove guilt beyond a reasonable doubt, to make out a prima facie case or even to establish that guilt is more probable than not." State v. Thorp, 116 N.H. 303, 307 (1976) (citing Spinelli v. United States, 393 U.S. 410, 419 (1969), abrogated on other

18

grounds by <u>Illinois v. Gates</u>, 462 U.S. 213 (1983)).  Although it is dependent upon the specific facts of a case, if there are no factual disputes, or if it can be resolved based on undisputed facts, the determination of whether probable cause existed is a question of law for the court to answer.  <u>See</u> <u>Kay v. Bruno</u>, 605, F. Supp. 767, 774 (D.N.H. 1985), <u>aff'd</u> <u>Kay v. New Hampshire Democratic Party</u>, 821 F.2d 31 (1st Cir. 1987).

Here, Batstone received the DVP, and accompanying DVPO, on April 15, 1997, the same day as the alleged assault.  Mrs. Bryant, the victim, had personally delivered the documents to the BCSO.  The DVP was undeniably "[s]ubscribed and sworn to by" Mrs Bryant, and the following detailed description appears on the face of the DVP:

> On 4-15-97 at approx. 10:00 AM my husband Richard A. Bryant became angry with me and when I closed the bedroom door to get away from him, and to avoid an argument in front of our children, he proceeded to slam the door open and head butt me above my right eye all the while yelling [and] screaming and grabbing me around the neck.  He also ripped my jacket off me breaking the zipper.  As I tried to leave the home he got right in my face and shoved me to try and prevent me from leaving [and] going to my mother's house.

County Defendants' Motion for Judgment on the Pleadings, Ex. A, Domestic Violence Petition signed by Mary Bryant.  The DVPO

indicated that, "having considered" the DVP, the Laconia district court judge found that Mrs. Bryant was "in immediate and present danger of abuse" by plaintiff.[5]

Plaintiff complains that Batstone did not have probable cause because he did not investigate further: he did not first question Mrs. Bryant about the incident (in fact he never saw or spoke to her); he did not observe any physical evidence of abuse; and he did not attempt to interview plaintiff about the incident before effecting his arrest.

Although not a per se rule, a victim's statement will generally suffice to support probable cause, absent some reason to doubt the victim's reliability. See B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984); Speigel v. Cortese, 966 F. Supp. 684, 691 (N.D. Ill. 1997), aff'd 196 F.3d 717 (&th Cir. 1999). Here, Batstone was relying on the alleged victim's sworn, detailed statement that identified her husband by name and described an altercation clearly within the bounds of

---

[5]The county defendants, relying on RSA 173-B:4, argue that this finding was necessarily "upon a showing of abuse by a preponderance of the evidence." RSA 173-B:4, I. However, because the DVPO issued was temporary, and issued ex parte, its issuance was governed by RSA-B:6 (as it existed at the time) which authorized a judge to issue temporary orders "[u]pon a showing of an immediate and present danger of abuse."

RSA 631:2-a.  See Lallemand v. University of Rhode Island, 9 F.3d 214, 216 (1st Cir. 1993) (victim's statement and identification sufficient to provide probable cause).  Although plaintiff mentions in his statement of facts that Mrs. Bryant allegedly threatened to file a false petition a year earlier, there is no reasonable basis to conclude Batstone had any knowledge of that threat, or of any other reason to think Mrs. Bryant would swear falsely, file a false petition, and seek to procure a DVPO by fraud.  Plaintiff has not alleged Batstone had knowledge, nor has he alleged, or argued in his opposition since retaining counsel, that Batstone had any reason to doubt the trustworthiness of the sworn DVP.  Furthermore, Batstone had the Laconia district court order, confirming a judge's finding, after considering the DVP, that Mrs. Bryant was in immediate and present danger of abuse.  These facts and circumstances were "sufficient to warrant a prudent person in believing that [plaintiff] had committed" physical abuse against his wife.  See Rivera, 979 F.2d at 263.  Furthermore, Batstone was not required to take the steps suggested by plaintiff because once an officer determines probable cause exists, further investigation is not required.  See, e.g., Franco-de Jerez v. Burgos, 876 F.2d 1038, 1041-42 (1st

21

Cir. 1989). Accordingly, because Batstone had probable cause to arrest plaintiff, he did not violate plaintiff's Fourth Amendment rights.

c.    Qualified Immunity

In the alternative, Batstone argues that if his determination of probable cause was wrong, he is entitled to qualified immunity and, therefore, not liable under § 1983. Although this defense is unnecessary since the court has found probable cause actually existed, in the interest of completeness, the court will address it.

In a § 1983 action, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is "an immunity from suit rather than a mere defense to liability," and should be decided at the earliest possible stage. Hunter v. Bryant, 502 U.S. 224, 227-28 (1991) (per curiam).

22

In the Fourth Amendment context, officers are "entitled to immunity if a reasonable officer could have believed that probable cause existed." Rivera, 979 F.2d at 263. This is true even if it turns out later that there was no probable cause. See Hunter, 502 U.S. at 227; Rivera, 979 F.2d at 263. It is an "objectively reasonable" test, that does not require exploration of an officer's subjective analysis, or purpose. Officers are entitled to qualified immunity for arrests "so long as the presence of probable cause is at least arguable." Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985) (extending to warrantless arrests test applicable to seeking arrest warrants). "[Q]ualifed immunity is pierced only if there clearly was no probable cause at the time the arrest was made." Id.

As the discussion above illustrates, when presented with a sworn statement by the alleged victim of domestic violence, in which an incident of abuse was described in detail, and the assailant was identified as the complainant's husband, it is, at the very least, arguable that a reasonable officer could reasonably believe he or she had probable cause to arrest plaintiff. Accordingly, even if probable cause did not exist,

23

Batstone would still be entitled to qualified immunity from liability.

#### 2. Sheriff Hodges

To the extent Count I is intended to include Hodges, there are no allegations capable of imposing liability under § 1983. It cannot be reasonably inferred from the complaint that Hodges was involved in the decision to arrest plaintiff. Although Hodges is Batstone's superior officer, he cannot be held responsible for Batstone's actions (if they were unlawful) because there is no respondeat superior liability under § 1983. See, e.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). Any liability must be derived from Hodges's own actions or omissions. See id. His apparent inaction following Mrs. Bryant's protest of the arrest (the only conduct by him alleged), absent allegations that he knew plaintiff was in fact innocent, or that Batstone did not have probable cause, does not state a claim for relief. Accordingly, based on the facts alleged by plaintiff, Hodges cannot be held liable under Count I, as a matter of law.

24

II.  Pendent State Claims

A.    Negligence[6]

Plaintiff alleges the county defendants breached a duty of care owed to him "by arresting him without probable cause and in direct dereliction of the alleged victim's request that the plaintiff simply be served with DVPO documents."  Complaint ¶ 63. In essence, plaintiff seems to be alleging a cause of action for "negligent arrest."  The court has found no support under New Hampshire law for such a claim in this context.  When faced with an allegation of "negligent arrest," courts have generally construed it as one for either false imprisonment or false arrest, see, e.g., Hernandez v. Metro-Dade County, 992 F. Supp. 1365, 1369 (S.D. Fla. 1997), or as an action for excessive force or wrongful death.  See, e.g., Daniel v. State through Washington State Patrol, 671 P.2d 802, 806 (Wash. App. 1983).  Still other courts have refused to recognize such claims in negligence.  See, e.g., Pourny v. Maui Police Dep't, 127 F. Supp.2d 1129, 1145-46

---

[6]The court notes that the county defendants mention the negligence claim in their motion, and in passing in their memorandum, but have failed to cite any authority supporting their claim to judgment on the pleadings.  See Local Rule 7.1(a)(2).  However, given the complete dependancy of Count III on the absence of probable cause (an essential element of the claim), the court will resolve the issue.

25

(D. Hawaii 2000); <u>Larson v. Lowery</u>, No. 86-C-5286, 1987 WL 6304, at *2 (N.D. Ill. Feb. 3, 1987).  This court has construed a claim for "negligent arrest" as one for false imprisonment, <u>see</u> <u>Kimball v. Somersworth</u>, CV 90-447-M (D.N.H. Feb. 17, 1993), and malicious prosecution.  <u>See</u> <u>Spaulding v. Town of Newport</u>, CV 94-316-SD (D.N.H. Dec. 23, 1996) (construing claim as both false imprisonment and malicious prosecution).

New Hampshire recognizes the tort of false imprisonment. <u>See, e.g.</u>, <u>Hickox v. J.B. Morin Agency, Inc.</u>, 110 N.H. 438, 442 (1970).  "False imprisonment is the unlawful restraint of an individual's personal freedom."  <u>Id.</u>  But, because the court has found Batstone had probable cause to arrest plaintiff, <u>see</u>, <u>supra</u>, § I(B)(1)(b), the arrest was necessarily lawful, and a false imprisonment count does not lie.  Accordingly, Count III must be dismissed.


B.    Abuse of Process

The tort of abuse of process is recognized in New Hampshire through express adoption of Restatement (Second) of Torts § 682. <u>Long v. Long</u>, 136 N.H. 25, 29 (1992).  The Restatement describes the cause of action as follows: "One who uses a legal process,

26

whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682, at 474 (1977). To state a claim for abuse of process, then, one must allege (1) an ulterior purpose and (2) a wilful act in the use of process not proper in the regular conduct of the proceeding. Clipper Affiliates, Inc. v. Checovich, 138 N.H. 271, 276 (1994). The ulterior purpose is generally some form of extortion. Id. at 277; Restatement (Second) of Torts § 682 cmt. b, at 475. "Absent some form of compulsory process forcing the performance or forbearance of some prescribed act, a claim of abuse of process fails." Clipper Affiliates, Inc., 138 N.H. at 277 (internal citation and quotation marks omitted). It is not enough to allege harassment or retaliation. Id.; see also Restatement (Second) of Torts § 682 cmt. b ("[T]he entirely justified prosecution of another on a criminal charge does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm.").

Here, plaintiff has failed to allege facts necessary to support finding in his favor on the necessary elements. Count IV relates to representations allegedly made to the sheriff's

department that led to the decision to arrest him and his actual arrest. Plaintiff alleges in conclusory fashion that the ulterior purpose of his arrest was to "injure him." Complaint ¶ 67. There is no allegation, either direct or indirect, that plaintiff's arrest was effected for the purpose of compelling him to do something, or give up something unrelated to the proceedings. See Clipper Affiliates, Inc., 138 N.H. at 277; Restatement (Second) of Torts § 682 cmt. b, at 475.

Given plaintiff's initial pro se status, and the court's obligation to liberally construe pro se complaints, it is possible that plaintiff actually meant to allege common law malicious prosecution. However, an essential element of malicious prosecution is the absence of probable cause. Johnston v. Flatley Realty Investors, 125 N.H. 133, 136 (1984). Accordingly, a common law malicious prosecution claim would also fail since the court has found that probable cause to arrest plaintiff did exist.

## Conclusion

For the above reasons, plaintiff cannot sustain any of his stated, or suggested, causes of actions against the county defendants. Accordingly, Noether's motion for judgment on the pleadings (document no. 14) and the county defendants' motion for judgment on the pleadings (document no. 20) are granted.

In the exercise of the court's discretion, defendants' request for attorneys' fees is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 30, 2001

cc:  Richard Bryant
     Jeffrey A. Runge, Esq.
     John A. Curran, Esq.
     Donald E. Gardner, Esq.
     Gary M. Burt, Esq.